

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

February 1, 2018

**VIA ECF and ELECTRONIC MAIL**
Hon. Richard J. Sullivan, U.S.D.J.
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007
Email: sullivannysdchambers@nysd.uscourts.gov

    Re:  *Valero v. Cugini Pizzeria Corp.*, No. 17 Civ. 9179 (RJS)

Dear Judge Sullivan:

  We represent Plaintiffs Inocencio Valero, Rafael Rivera, Cynthia Guinea, Luis A. Castillo Martinez, Jorge Rafael Gil Samayoa, and Eleuterio Daniel Jolomna Chub (collectively, "Plaintiffs") in the above-referenced action. We write jointly with Cugini Pizzeria Corp., Andre Loguidice and Konstantinos Theodoratos (collectively, "Defendants") (together with Plaintiffs, the "Parties") to inform the Court that the Parties have reached a settlement, and respectfully request judicial approval of the Parties' proposed Settlement Agreement (hereinafter, the "Agreement") attached hereto as **Exhibit 1**.

  The Agreement provides payment of Fifty-Five Thousand Dollars ($55,000.00), inclusive of attorneys' fees and costs, for the Plaintiffs. For the reasons outlined below, the Parties submit that the Court's approval is warranted.

## BACKGROUND

  On March 7, 2017, Plaintiffs sent Defendants a pre-litigation demand letter informing Defendants of Plaintiffs wage and hour claims. After several months of negotiating, the Parties reached a settlement in principle in or around August 2017. However, despite Plaintiffs best attempts to finalize the proposed settlement agreement, Defendants stopped communicating with Plaintiffs and failed to execute any settlement agreement. Again, after Plaintiffs' best efforts to re-engage in settlement discussions failed, Plaintiffs filed the instant action on November 22, 2017. *See* ECF No. 1. Specifically, Plaintiffs alleged that Defendants failed to provide them with the proper minimum wages, overtime compensation and spread-of-hours pay as required under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Furthermore, Plaintiffs also alleged that Defendants failed to provide them with an annual wage notice and accurate wage statements under the NYLL.

  Plaintiffs worked for Defendants as delivery persons and servers (collectively, "Tipped Employees") and dishwashers, food preparers and cooks (collectively, "Non-Tipped Employees")

unlawfully availed themselves of the tip credit as they failed to properly inform them of the tip-credit provisions of the FLSA and the NYLL, entitling Tipped Employees to the full minimum wage rate. Moreover, Tipped Employees were paid "straight time" for hours they worked in excess of 40 per workweek. As such they are entitled to the difference between the rate they were paid and times and one-half the full minimum wage rate. Non-Tipped Employees were, at times, paid at an hourly rate that was below the applicable minimum wage rate. Throughout their employment, Non-Tipped Employees were paid "straight time" for the hours they worked in excess of 40 per workweek. As such, Non-Tipped Employees are entitled to the difference between the rate they were paid and times and one-half their regular hourly rate for all hours worked in excess of 40 per workweek. Finally, both Tipped and Non-Tipped Employees were required to work shifts spanning in excess of 10 hours and were not compensated spread-of-hours pay.

Shortly after notifying Defendants that Plaintiffs commenced this action, the Parties began discussing the possibility of settlement again. From the outset, Defendants disputed liability, as well as the amount of claimed hours and damages. After extensive negotiations, the question of whether Defendants were financially capable of funding a settlement was at the crux of this case. In that regard, Defendants provided tax returns which showed financial hardship. Based off these documents, the Parties were able to reach a settlement of $55,000.00 on behalf of Plaintiffs. Thereafter, the Parties negotiated the terms of a comprehensive settlement agreement, which was fully executed on January 23, 2018. The settlement negotiations were at all times hard fought and at arm's length, and they have produced a result that Plaintiffs' counsel believes to be in Plaintiffs' best interests in light of the costs and risks of continued litigation, including the risk of collecting a greater amount from Defendants.

## THE SETTLEMENT

After extensive arm's length negotiations, the Parties were able to reach a total settlement agreement of $55,000.00. After reasonable attorneys' fees of one-third of the total settlement amount, and reimbursement of costs, Plaintiffs will receive $36,249.18 of the total settlement amount, which was allocated to each Plaintiff based on their individual dates of employment, approximate hours worked, and rates of pay. The chart below shows each Plaintiffs' estimated proportionate share of the settlement:

| Plaintiff | Share *before* Attorneys' Fees | Share *after* Attorneys' Fees |
|---|---|---|
| **Inocencio Valero** | $11,434.50 | $7,535.58 |
| **Rafael Rivera** | $9,878.00 | $6,509.81 |
| **Cynthia Guinea** | $3,410.00 | $2,247.26 |
| **Luis A. Castillo Martinez** | $12,012.00 | $7,916.16 |
| **Jorge Rafael Gil Samayoa** | $10,510.50 | $6,926.64 |
| **Eleuterio Daniel Jolomna Chub** | $7,755.00 | $5,110.71 |

The total settlement amount will be paid in five (5) separate monthly installments. Each monthly installment will be in the amount of Eleven Thousand Dollars ($11,000.00) and will be distributed between Plaintiffs and Plaintiffs' counsel on a pro rata basis. In the event that

Defendants default on any of their monthly obligations, the Parties agree that the Court is to retain jurisdiction to enforce the Agreement's terms, and Plaintiffs will be entitled to immediately enter judgment against Defendants in an amount double the outstanding balance due if Defendants fail to cure their default within three (3) days after receipt of a notice to cure. As described below, the Parties submit that the Agreement represents a fair and reasonable resolution of Plaintiffs' FLSA claims asserted in this matter.

## THE SETTLEMENT SHOULD BE APPROVED

"The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at * 1 (S.D.N.Y. Feb. 3, 2016) (Sullivan, J.) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted). "The Second Circuit has noted that the 'FLSA's primary remedial purpose' is 'to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees.'" *Id.* (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015)). Furthermore, the court in *Wolinsky* sets forth the following criteria for determining whether a proposed settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotations and citations omitted). Based on the above criteria, the proposed settlement, which provides for payment of $55,000.00 in five monthly installments, and was the result of hard fought and arm's-length negotiations between experienced counsel, is fair and should be approved.

Based on Plaintiffs' counsel's knowledge of the facts, regulations and case law pertaining to Plaintiffs' claims, Plaintiffs' range of possible recovery for their FLSA claims was between approximately $0.00 and $137,442.04 representing the damages for unpaid minimum wages overtime compensation. While the above figures represent extremes, Plaintiffs' counsel contends that there was a strong possibility that Plaintiffs could have truly recovered nothing as a result of the collection risks present in this matter – pursuing this matter further and potentially winning at trial could realistically bankrupt Defendants. When compared to the litigation and collection risks discussed further below, the settlement of $55,000.00, payable in five monthly installments, is fair, reasonable, and realistic. As such, the first factor weighs in favor of approval.

Factors two and three also weigh in favor of approval. As in any FLSA matter, if the Parties were to engage in a discovery process, the Parties would need to conduct depositions of all parties in order to establish their respective claims and defenses. Such litigation would require the Parties to invest substantial time and expenses. Moreover, both Parties face serious litigation risks. While Plaintiffs believe they will ultimately prevail on their claims, Plaintiffs acknowledge that they face significant risks in establishing liability and damages. These risks include proving that they were paid "straight time," that they worked the hours they alleged to have worked, and that they were in fact underpaid. From the outset of Plaintiffs' Counsel's communication with Defendants' Counsel, Defendants have vehemently disputed Plaintiffs' allegations. In addition, Defendants dispute Plaintiffs' characterization of Defendants' pay practices. Defendants' defenses are critical as these facts would determine the amount of damages Plaintiffs would be entitled to as well as the Defendants' exposure to liability.

Moreover, and of perhaps greater significance, pursuant to Defendants' counsel's representations and Plaintiffs' counsel's independent research into Defendants' assets, it is unclear that Defendants could withstand a greater judgment. As a consequence, Plaintiffs would face considerable collection issues after any continued litigation. In addition, it is possible that a higher settlement amount or judgment could force Defendants to declare bankruptcy, which would complicate any collection opportunities and add to the possibility of extensive delays. Not to mention, several Plaintiffs are currently employed by Defendants, as such, they would lose their jobs if Defendants declared bankruptcy and closed their business. Defendants' inability to financially satisfy a higher judgment – which was confirmed by their financial records – was a significant concern for Plaintiffs in deciding to resolve this matter now and agree to the payment plan. This settlement resolves a bona fide dispute between the Parties, contains a release of wage and hour claims (excluding retaliation) under the FLSA and the NYLL, does not contain a confidentiality or non-disparagement clause, provides a substantial payment to the Plaintiffs, and provides a Confession of Judgment executed by the individual Defendants. Therefore, this factor weighs in favor of approval. *See Plizga v. Little Poland Restaurant Inc.*, No. 15 Civ. 8820 (LAK) (BCM), 2016 WL 930747, at *3 (S.D.N.Y. July 18, 2016) (finding that the settlement agreement was fair and reasonable in part because the plaintiff faced risks in collecting a greater judgment after trial due to the defendant's financial hardship).

Lastly, factors four and five also weigh in favor of approval. Both Plaintiffs' Counsel and Defendants' Counsel have negotiated at arm's length, and have significant experience handling wage and hour claims.

## ATTORNEYS' FEES AND COSTS

As the court in *Wolinsky* states, "[i]n an individual FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorneys' fees." 900 F. Supp. 2d at 336 (internal quotations and citations omitted). In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' counsel, the Consent to Join forms signed by all Plaintiffs, and the Court's rules, the Agreement provides that Plaintiffs' counsel will recover $18,753.82, equaling one-third ($18,333.33) of the total settlement ($55,000.00) plus expenses ($420.49). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreements, and a

contingency fee of one-third is sufficient to account for the risks associated with representation. Plaintiffs' counsel has worked without any compensation to date, and Plaintiffs' counsel's fee has been wholly contingent upon the result achieved. *See Chauca v. Abitinos Pizza 49th Street Corp.*, No. 15 Civ. 6278 (BCM), 2016 WL 3647603, at *2 (S.D.N.Y. June 29, 2016) (stating that attorneys' fee awards of one third are generally accepted in the Southern District of New York).

Through the date of this filing, Plaintiffs' counsel has spent approximately 35.75 hours litigating and settling this action. The hours reported are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney participating in the case.[1] Since November 2014, all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than 2% percent of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful.

As such, in reviewing Plaintiffs' counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2000). Even under the "lodester" method, Plaintiffs' counsel's one-third fee award is more than reasonable, as their lodestar is $9,790.00, which is a multiplier of approximately 1.87. *See Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.")).

Lastly, Plaintiffs' counsel expended $420.49 in litigation costs and expenses. These costs are primarily comprised of filing fees ($400.00) and postage expenses ($20.49).[2] These costs are commonly reimbursed by courts in this District. *See e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016) (awarding $579.78 for expenses including $400 filing fee and costs of mailing, legal research, and service of process); *see also Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2014 WL 4996248, at *9 (S.D.N.Y. Oct. 7, 2014) (awarding $607 for litigation expenses, including filing fees, service of process, and postage and delivery costs). As such, Plaintiffs' counsel's attorneys' fees are fair and reasonable.

---

[1] Contemporaneous time records can be made available to the Court upon request.

[2] In order to reduce costs associated with litigation, Plaintiffs' counsel did not serve process on Defendants while negotiating this settlement.

Hon. Richard J. Sullivan, U.S.D.J.
February 1, 2018
Page 6 of 6

---

\*   \*   \*

For the reasons set forth above, the Parties respectfully submit that the proposed settlement complies with the Second Circuit's and this District's standards and procedures for settlement approval, and respectfully request that the settlement and the related attorneys' fees and costs be approved by the Court.

We thank the Court for its time and consideration in this matter.

Respectfully submitted,

Nicholas P. Melito

cc: Counsel of record (via email).